Melendez-Roxas). Your Honors, it is even more apparent now than when the briefs were filed in this case that abortion is the number one most intense, most divisive issue in American by trickery and two unsuccessful attempts to either persuade or coerce abortions. This is something that I would submit was inflammatory even in the context of a sex trafficking case. This is something, abortion is something that many people consider as murder. Interference with life. What if it was murder? I mean there are threats in this case to murder family members of the allegedly trafficked women. True? Wait, wait, wait. First answer the question. Am I right? Because maybe I'm wrong. Is it true that part of the evidence was that some of the defendants threatened the victims with murdering their families if they did not continue to engage in prostitution? There was testimony to that, Your Honor. And no one's objecting to that. I wonder why. If abortion is murder to some people, murder is murder to pretty much everyone. And since that was allowed, why isn't this the same sort of thing? It's terrible deeds that are done as a way of demonstrating the coercion that was imposed on the victims. Two things. First of all, there was no evidence of violence ever actually being done to any of the family members of the victims. It was all words. Second of all, the district court's rationale for admitting these abortions as evidence of coercion was the trickery in and of itself is the same thing as forcing. That's rationale that even the government doesn't defend in its brief. And without that equivalency that the district court drew between trickery and force, the relevance of this abortion evidence evaporates. And again, I would submit that actual attempts to procure abortions are going to weigh more heavily and be considered by the jury as a more personal violation than threats that were not carried out. Right. But it is a – but all of this, threats, actual acts of violence, grotesque acts of violence, that's the stuff of the trade of coercing, coercive trafficking. And it's – I'm having a hard time understanding how we – how a judge could even reasonably exclude testimony that is directly part of the crime. Well, I'm out of time, Judge, but I would submit – You can answer the question. Yes. I would submit that trickery is not part of the crime. Force was what was charged. This was not – and again, the district court's rationale – part of the evidence was deceiving women into believing that they were going to be brought to the United States to get married and have jobs that are legitimate jobs. That's relevant, is it not, to the trafficking charges? Well, not when these attempts at abortions occurred much later. After this deceit, the initial deceit had already been complete. And after the government's theory at this point was that once the deceit was complete and they were in the United States, they were allegedly kept here by force. These abortions were obtained by trickery, not by force. The district court didn't say these are relevant because they're trickery and therefore related to deceit. The district court's rationale was trickery is force. Deceit is force. And again, that's a – having been tricked into an abortion is indicative of control or coercion, which, though not directly force, is relevant to the environment that the government argued was maintained, wasn't it? Well, what I would submit, as pointed out by defense counsel below, was that the fact that these defendants either had to trick the victims into obtaining abortions or else make unsuccessful attempts shows that they were not able to coerce these – the abortions and that this, in fact, undermines the evidence of coercion rather than supporting it. I would – but in any event, I would submit even if there was some marginal relevance here, there are – the cases that we've cited in the briefs indicate that abortion is just such an explosive issue that unless, you know, like in the NXIV case or Rainier, I'm not sure if I have the abbreviation of the cult right, where the abortion evidence was necessary to prove that there was a sexual relationship in the first place, unless there is that degree of necessity, I would submit that this evidence should have been excluded and that this is a case that hinged heavily on the credibility of the complainants and where the strategy that's often pursued in these cases is get the jury to sympathize with the complainants and get them angry at the defendants. And nothing could do that more intensely than abortion. I don't know if I even have time to reserve. You still have your two minutes for rebuttal. Thank you, Mr. Chairman. Okay. Thank you, Judge. And we'll hear from Ms. Kelman. Thank you. May it please the Court. Your Honors, I'm here on behalf of Jose Miguel Melendez Rojas, and with the Court's permission, I'll address our Rule 29 motion. I don't remember ever making a Rule 29 motion before this Court, but I think that it is a powerful motion here and it affects Counts 10, 11, and 12 as to my client. Count 10 is trafficking, sex trafficking a minor, and 12, Count 11 is transporting a minor for sexual purposes, and Count 12 is alien smuggling of a minor. And in each one of these cases, they all affect one particular victim, and it's a victim named Delia. And in Delia's case, the only connection that the government proved was that my client was present in a taxi cab between the Bronx and Queens when Delia was being trafficked. But there was no evidence that my client was involved in her trafficking, participated in her trafficking. All he did was sit in a taxi cab with her. That's the evidence against him. So that being said, and I've outlined that in my brief, if the Court has questions, I'm happy to answer them, but the reality is in these three counts, and there are plenty of others, but in these three counts, his only participation is being present in the taxi. And that, you know, even by the judge's charge, which I have objections to the knowledge aspect, but with respect to the charge even I'm aiding and abetting, sitting in the taxi does nothing. He's not driving the taxi, but sitting in the taxi does nothing, contributes nothing to the success of the venture, and also doesn't further the crime in any significant. He is a passenger, as she is. He's not holding her there. He's not driving, so... She testifies, am I right, that the two people in the cab paid extra money to the transporters when they indicated they want additional funds, and there may have been, I think she testified that it was maybe Oswaldo and someone else, but not your client, although he was the person who traveled together with the other named person in the cab, is that right? That's correct, yes. There was no Pinkerton charge in this case, right? There was not. And could you just enlighten me, is there, what is the practical effect of, if we agreed with you that these counts needed to be vacated, how does that affect the, if at all, does that affect the sentence that was imposed? It doesn't. It doesn't. It doesn't, but then we get to the second issue, which I can argue or... Right, I mean, there are a whole host of issues. I'm just, this one, you know, several of the defendants have rifle shot attacks at particular counts, and, you know, it's not always clear from any of the briefing what the impact is. I think that, fundamentally, Judge, the larger question is whether or not the instructions that the court gave, and in my situation, it's counts 2 and 11, which would knock down certain of the other charges, and that was with respect to whether or not it was appropriate to read out, if you will, the element of age, of knowledge of age. Knowledge of age, right. Knowledge of age. That affects everyone across the board, and it affects some significant counts. Exactly right. Right, I understand. That's exactly right. So, I think the court understands that argument, and I don't need to explain it, and so... Thank you, Ms. Gilman. You do have a minute for rebuttal, if you'd like it. Mr. McLaughlin. Good morning, Your Honors. Devin McLaughlin on behalf of Francisco Melendez-Perez. I'm likewise deferring the knowledge and intent issue with regard to age to more learned counsel behind me. I think he's up next. With regard to this one, Your Honor, on behalf of Francisco Melendez-Perez, we're looking for acquittal on Counts 8 and 9, which have to do with the sex trafficking and alien smuggling of Maria Rosalba. As you saw from the structure of all this, each person was effectively responsible for one person that they were prostituting. Jose Osvaldo was the one who dealt with Maria Rosalba. My client literally had next to nothing to do with Maria Rosalba. And under this Court's law with regard to aiding and abetting, there needs to be at least some affirmative act that contributed to the success of the underlying substantive crime, even if only with the edges. Didn't he travel with Maria Rosalba and Delia across the border? He did not. Well... Not... I thought he was involved in doing some coaching of Delia as to how to deal with the border control people and if they were apprehended. Correct. Now, that's not Maria Rosalba, but didn't she and Delia travel together? Correct. Yes. Sorry, I thought you meant successful. So there are three trips by Maria Rosalba. Two trips involved Francisco, Delia, Francisco was 16 at the time, Delia and Maria Rosalba. Both of those attempts were unsuccessful. The third trip where she made it across, she wasn't with Francisco. The only thing the government can hang its hat on in all of this is the evidence that my client Francisco told Delia, don't tell anybody, you know, don't talk to people when you're questioned at the border. There's no evidence that that was ever communicated to Maria Rosalba. There's no evidence that Maria Rosalba ever heard it. And importantly... Well, it doesn't matter, does it? I mean, if they're traveling together and he is assisting in trying to make that crossing successful, wouldn't that be an act that is involved with aiding and abetting Osvaldo's transportation of Maria Rosalba? So it's a small act, granted. But an act that fails in light of the fact that they didn't succeed on those two. Remember, the substantive crime is actually alien smuggling, the time that she got over. It's not attempted alien smuggling. And so the two times that he was with them, they don't get over. The government tries to pin their hat on that. And what they end up saying in the brief is that what Francisco told Delia, quote, would not be unimportant to Maria's later successful border crossing. Those don't tie together. There's zero evidence that when Maria Rosalba was successfully across the border, that that had anything to do with, at one point, my client telling Delia something. I understand that point. I get that. The other thing that I was curious about, it seemed to me that the account of what went on in Mexico seemed to somewhat intertwine Maria Rosalba and Delia in that they were co-workers and one was introduced to the conspirators by the other. And there were visits to both of the families that I thought involved both Osvaldo and Francisco. And so I'm having a little trouble disentangling Francisco entirely from the kind of Maria Rosalba slash Delia axis, as it were. Those seem to be very closely connected, unlike some of the situations where you have another woman or girl who was trafficked at a completely different time and place that is clearly, well, there's no direct involvement by certain of the conspirators with that. And so, Your Honor, from our perspective on Rule 29, clearly there was some intertwining in terms of these families in Mexico. And those acts are there. The specific subset, my client, we're not challenging, sorry, conspiracy. We're not challenging any of that. We're charging the substantive crimes and his aiding and abetting liability for the alien smuggling, as you can see from the government's brief, it's literally what did he do to help her cross the border? And the answer from our perspective on the evidence is nothing. With regard to what did he do to sex traffic her, which is the other count that we're challenging, nothing happened in New York. Nothing happened in the smuggling. But as Your Honor indicates, there was this interaction or intertwining in Mexico. But what it was was, you know, introduced one girl to the other, they're friends. They start dating. The two acts that the district court relied on in terms of what happened in Mexico were, one, they all kind of went on this outing to go ahead and see the parents of Maria and Delia. But when you look at that, and obviously there's a lot of evidence and it's a long case, but there's literally no evidence that my client ever went into Maria Salvo's house, ever said hi to the parents, ever did anything to go ahead and do that. And the second piece of evidence. And this is the contention that that was a recruitment effort? The district court in holding that there was enough to survive a Rule 29 on the sex trafficking aspect said that the two things he hung his hat on was that outing, which he said encouraged, you know, under aiding and abetting, encouraged the recruitment, et cetera, of Maria Salvo. And clearly did, but the question is what did my client have to do with it? Because then they went to Delia's house, and he's guilty on Delia, and we know that, but there's no evidence as to what he did with Maria Salvo. And then you get to the second piece of evidence the government hung his hat on, which is that while Jose Osvaldo was holding her effectively captive in his family compound or whatever it is, he was the one who would drive her back and forth to the parents' house and would tell Osvaldo everything. I mean, that's the one sentence of the whole transcript that may be relevant to the sex trafficking. Our position, Your Honor, in terms of Rule 29, obviously, has got to be proof beyond a reasonable doubt that that is not, it's too thin a reed to hang this liability. And, Your Honor, with regard to the question you asked in terms of what does it mean, my review of it is I don't think it changes the guidelines. I don't think it changes the sentence, but he's wrongly convicted on two counts. Yeah, I understand, it's important in its own right. But I did want to look at how does this change the guidelines. The other larger question about this case that I find puzzling, and they don't matter very much in the long run, but I've never been a big fan of Pinkerton. I've never been a fan of the idea that if you get involved in a narcotics conspiracy and it's sort of foreseeable that someone will engage in violence in the course of that conspiracy, you're sort of on the hook for that. That seems to me rather extreme. But is it not somehow relevant that all of these folks are engaged in a large, very much interconnected conspiracy to smuggle women into the United States and have sex trafficking happen? This is actually like the Pinkerton case itself, which was much narrower. It was a case where the substantive charge was the very object of the conspiracy that is the larger thing. And it just, I'm a little concerned that separating out each and every one of these acts and saying, ah, what precisely did this person do with respect to this victim divorced from the context of the larger conspiracy is somewhat artificial, isn't it? Could I submit, Your Honor, that I think you just hit the nail on the head. He's guilty of conspiracy. We're not challenging conspiracy. I understand. And so that whole he's involved, he understands, all that kind of stuff. But for example, when you look at this, I'd actually forgotten until you brought it up, but the evidence that Francisco reported to Osvaldo on Maria Resalda's movements, engaged in a sort of surveillance, isn't that much clearer than the stuff with Delia? That's, with respect to the sex trafficking rather than the smuggling, that's part of what this whole enterprise did. They helped each other out. Yes, it's true that there was a close connection between particular defendants and particular women, but they also assisted each other when needed. And this would be an example of that, keeping tabs on somebody, which is part of the PIMP enterprise, right? So why isn't that the critical evidence of aiding and abetting at least the sex trafficking part as opposed to the alien smuggling part? And I'll try to be quick because I'm over time. Sorry, I know we have a lot of people. That having charged him with a substantive crime relating to Maria Resalda, the easy answer is that I don't think they should have charged him. Deal with Delia, et cetera. You charge him with conspiracy, fine. All of his mental stuff, all of his I'm in it together, I'm in there to help my uncle, this isn't a mens rea argument. It's an actus reus. Did you do enough raiding and abetting? What about this, put aside my speculative stuff. What about the evidence of the surveillance? Why isn't that significant? It's one sentence in a however many day trial. Yeah, one sentence could be he shot somebody, I saw it happen. Usually with blood and guns and all that kind of stuff, but there's not enough evidence in terms of, Maria Resalda says he told Osvaldo what I was doing. I don't even know what that means. I don't know if it means that he brushed it to you. I don't, there's, our submission is that there's not enough evidence beyond reasonable doubt to hang the conviction on that one of us. Thank you. Thank you. Mr. Gluckman, you do have a minute for rebuttal. Thank you. Mr. Singer, I gather you're taking the mens rea issue. Yes. And you're learning counsel. I drew the long straw. Murray Singer for Jose Osvaldo Melendez Rojas, good morning, your honors. For over 15 years, the Supreme Court has said that the plain language of a statute should control. If the language is clear, that's what should govern. And they've said it over and over and over again. The language of 2423A is clear in terms of the knowledge required, knowledge of transporting someone who is under 18 years of age. The only argument that has been put forward, if it's in case law or certainly that the government is arguing, that says that for some reason in this statute it should not apply. Well, isn't part of that because in the principle cases that you rely on, in each of them, the Supreme Court drops a footnote about the age of victims in sex cases? Could be a different story, and we're not talking about that here? They're in footnotes. I mean, they're certainly not statements. But fine, but fine, excuse me. If the government were arguing that that means that the Supreme Court has held that this statute is different, that would be one thing. But it seems to me we're in a situation where we have binding precedent in this court with respect to this particular statute, and you are arguing that the Supreme Court cases are game changers with respect to that precedent. So it seems to me that the fact that in a footnote, which is actually where courts typically put statements that we're not actually dealing with this thing, that might be a different case, we'll deal with that when we get to it, takes on a different coloration than it would if we were writing on a clean slate with respect to circuit precedent. I would submit that it doesn't make this case different. The language of the statute is clear, and the only reason not to apply the plain language of the statute is a public policy argument. And I submit that a public policy argument like this, whether there should be strict liability for the trafficking of someone who is underage, that is a valid public policy argument, that should be made by Congress. Congress knows how to write strict liability statutes. They've done it in other contexts, and they haven't done it here. And for the courts to say, or we believe it's inappropriate for courts to say, well, there are public policy reasons why the plain language of the statute should not apply. And I- But, I mean, just to be clear, this argument is a preservation argument, because you're not really making an abrogation argument of Griffith, right? We're bound by that. You're making arguments why it was wrongly decided, not that subsequent precedent has, requires us to ignore it. Public policies- I'm arguing both. I think I'm arguing both. That it's our contention that Griffith is wrongly decided, because again, it's based on a public policy that is read into the statute, that we believe it's not for the judiciary to do, it's for Congress to do. But also that now many years of Supreme Court case law,  Supreme Court talks out of all sides of its mouth all the time. In excitement video, they read in a mens rea requirement with respect to age. That clearly is contrary to the grammar of the statute. And they did it because that was, in that case, where we're dealing with depictions of sexual activity, the age was the very element that made the conduct criminal. As opposed to the element that enhanced liability. Now, if I were writing from first principles, I would say, I don't see why that matters. We, after all, do require proof beyond a reasonable doubt and knowledge with respect to things like the amount of drugs when that escalates the punishment. But in the area of sexual offenses against minors, when Congress wrote the statute that we're talking about, they were writing against the background of an entire history, which is now a little bit different. But an entire history of disregarding mens rea in the context of statutory rape and similar cases, where indeed it is the age of the victim that makes all the difference to whether it's a crime or just a non-criminal legal sexual act. So, I have a little trouble with the idea that the Supreme Court is quite as literal minded and pays no attention to where these statutes come from and where they are situated in history. It's not that they don't pay any mind to it, but what we have is a series of cases now, over 15 plus years, where repeatedly the Supreme Court is saying, the language of the statute means what it means. The plain language of the statute means what it means. And unless and until they are going to address each particular statute where this issue comes up, I would argue that the lower courts should take their lead on it and address statutes the way they're written and not read things in that Congress could easily remedy. If there was a concern about that, it's something that Congress could easily remedy. It's for the Congress to do that. We submit not the courts. There are no further questions. Thank you very much. All right, Mr. Houston. Good morning. Morning. On behalf of Abel Romero Melendez, I appreciate the time to discuss my client's case. I'm going to defer to Mr. Singer on the mens rea argument. I'm going to focus on the issue about Diana. As I see it, and as we've argued, essentially you have the Rule 33, the Rule 29, and the confrontation argument all intertwined around that, I would say, key part of the case. So here we have, I'm the defense lawyer. I'm expecting a trial where Diana's going to say, from all the disclosures that I've dealt with in this case, that yes, I know who Abel is. Yes, he knows his cousins. Yes, there is a statement that he kept me, he was there, a part of the people keeping me hostage in the house. Okay. Then at trial, we have, oh no, Abel was the one who gave me the telephone. Told me to give the fake birth date, how to come into the United States. He came in a day after me. He came in with Christina Sanchez. He was there when I was sexually assaulted and raped. Complete divergence from all pre-trial disclosures. Now, why does that matter? The pre-trial disclosures that we're talking about, to be precise, are 3500 material, right? That's correct, Your Honor. And we're not talking about any exculpatory statements that she may have given to the government that were not disclosed. We're talking about inculpatory statements that she presumably made to the government at some time that are not recorded in the 3500 material. That's correct, Your Honor. And you were able to cross-examine rather effectively, it seemed to me, the witness with respect to the fact that apparently the things she was saying at trial, she had not previously told the government. Yes, Your Honor, to a point. But then there comes the issue about the confrontation, where we have the government's repeated interjections, objections, and the interference that they put up. And then you have also the... That's what lawyers do at trial. They make objections, and the objections are sometimes sustained, and they're sometimes overruled. If they're sustained, then you can argue that the judge made an error, but if they're overruled, life goes on. Well, Your Honor, it went beyond that, respectfully. Where we had the district judge literally giving voir dire to the witness, saying that the refreshing recollection technique, well, what the lawyers are saying may not even be true. This was a pattern. But it seems to me that almost no one who is not a lawyer, and I dare say many lawyers, have very little understanding of what exactly refreshing recollection means. You do, and you did a very effective job with it. But witnesses, one of the reasons it's effective is witnesses sometimes look at a document, and what they think in their minds is not, oh, yeah, now I remember. But what they think in their minds is, oh, the agent wrote this down, so this must be what I said. To tell a witness to distinguish between those two things seems to me appropriate for a judge. But more importantly, then things went on just as they had been before the judge said that to the witness. The witness didn't suddenly start seeing the light, as it were, and saying, oh, I just have to say I still don't remember. The witness continued to say, yeah, I guess I didn't say that during that interview, which I imagine is the truth, and which you were effectively able to bring out. So I'm having trouble seeing how the cross-examination was impeded by the judge's correct instruction to the witness about what the question meant. Your Honor, context matters. And so here we have a situation where on the heels of what we've been doing, the judge literally is saying, well, what the lawyers are saying may not even be true, and how they're confronting you may not be appropriate. So I do think the context matters, but just I'm over my time, but I wanted to just focus this briefly. And by the way, that, colloquially, that wasn't your cross-examination at that point, was it? No, it was not. It was Mr. Dunn's, Your Honor. And just briefly, Your Honor, I'm over my time, but that goes to the other issue in terms of the pre-trial, the disclosures of 3,500 material, where you have such a divergence of facts that have changed. We've never received any notes, any information about that. Is your argument that the divergence means there must be notes that weren't turned over? Or is your argument that the witness must not have been telling the truth because the information contained in the notes is different than the testimony? Well, Your Honor, I think that the witness is not telling the truth. Right, and that's what you argued to the jury. But I do think I'm entitled to the notes irrespective of what the witness. But if you're not arguing that the note must exist, you're not entitled under 3,500 to what the witness might testify to separate and apart from what's in the notes. Your Honor, with all due respect, once the witness... That's a deposition. But once the witness testified under Rule 3,500, I'm entitled to all statements of all notations made about what the witness said. The first question, which I think you answered accurately, was, are you arguing because she testified differently that there must be notes you didn't get? Or are you arguing that the divergence means she didn't tell the truth? And I think, as you just said, whether we wrote it down or not, is that she wasn't telling the truth. And you're not entitled to know under the, maybe you ought to be, but you're not under 3,500, what she is going to testify to, what you're entitled to, is what is written down in the notes. So there's nothing in this record, nor as you just, I think, clarified. Are you saying that because of the divergence, there must be notes that we didn't get? Well, Your Honor, I think there must be. I mean, I think that's just simple logic and practice. I don't know how experienced prosecutors and special agents can proffer a person eight times and then have completely different testimony and that they don't take notes. I just refuse to, more or less, accept something that I think is preposterous. Okay. So then the answer to my first question is, I'm arguing because there's such divergence between the testimony and the notes, there must be other notes that we didn't get. Is that the argument? Yes, Your Honor. And therefore, you are entitled to what? An evidentiary hearing on that subject? Is that what we're being asked to order? Yes, Your Honor. Because the government represented, sorry, there are no notes, right? I mean, the government... In a declaration. In a declaration. So you're entitled to have that cross-examined and to bring in all of the various people who might have been at any meeting and have a hearing before the district court on whether that representation is false based on the inference that it seems logical that there must have been notes. So that must be a lie when the government says there are no notes. Well, Your Honor, in terms of a declaration, you know, maybe I'm missing something, but what I saw in their briefing is that they're saying we're imagining this. That's what I've seen so far. There has been representations, but I don't think I've seen a specific declaration to that fact. I might have misstated. I don't want to have such a... My colleague. Okay, so there's nothing under oath, and that's why I said in my brief, I would ask this court to ask them, are there notes? I mean, it's simply, what we have in this system... Well, if we ask that, we're going to, which I think I will, we're going to get another representation. Was not such a representation made to the district court when you made this argument? Well, it didn't really happen because COVID happened. And so everything shut down. We literally, our trial was the trial that ended like Friday before the national emergency happened. So everything was done by papers. So that's really all we have are the paper filings of my motions and the government's opposition. That's what we have. So we've never had pointed questions about this issue. And that's really all I'm asking. I mean, maybe the answer is there are no notes. And everybody just listens to a witness say something, you know, literally, oh yeah, Christine Sanchez was 15, even though we do have her driver's license says she's 18 to 19. So, and maybe no one takes any notes. And oh yes, yes, Abel Romero gave the address, or excuse me, gave the birthday, even though she said before, Jose said this. And that Abel came... Okay, but I'm not sure what COVID has to do with it, because I don't understand why it could not have been put to the district court, as it evidently was not. That, well, was it made... I asked for a hearing, Josh. You asked for a hearing. I did, and I didn't get it. Okay. I mean, I did. And so I've been trying to push this issue. Got it. Understood. I'm out of time. So I have one minute left, but thank you. No, thank you. I understand your point. And you have reserved that, Mr. Houston. Thank you. Mrs. Kastner, I suppose you know what the first question is. May it please the court, my name is Jillian Kastner, and I'm an assistant United States attorney in the Eastern District of New York. I represented the government at trial in this case. I'd like to start, unless your honors have another preference, by just addressing a few aspects of the sufficiency challenges first. I just want to note there was a Pinkerton charge in this case. It is at docket 251 of the district court docket, pages 1761 through 1763, where the court stated... Okay, let me just say that again so that my law clerk can write it down. But you're saying this was not in the appendix? That's correct. Unfortunately, it was not included in the appendix. But it is, this was, the page you are citing is effectively a page of the transcript of the trial where a Pinkerton charge is given to the jury. Correct. You didn't make that, you didn't say Pinkerton. It's all over in response to these various sufficiency arguments, because it was certainly the first thing that occurred to me, is that these people are all concededly, it seems, guilty of conspiracy to do the various things that the substantive charges involve. I believe that's accurate, your honor. I can provide the citation more slowly. Yeah, please do. It's docket number 251 on the district court docket, pages 1761 through 1763, where the court notes that reasonably foreseeable acts, declarations, statements, and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy are deemed under the law to be acts of all the members. Here, there's no dispute that all of the defendants were convicted of and guilty of participating in a sex trafficking conspiracy, which involved Delia, Maria, and all the other victims who testified, as well as victims who were not present during the trial, but referenced throughout the trial. And so I think the sufficiency challenges as to both Miguel and Francisco don't withstand scrutiny under either a Pinkerton theory of liability, or also an aiding and abetting theory of liability, because certainly, given the nature of this business and the fact that the victims all endured extremely similar courses of abuse and conduct, it would have been foreseeable to them that- At the same time, it's interesting to me that the government did not charge in the indictment that each and every defendant is responsible for the trafficking of each and every victim. Instead, the pattern of charging, I think commendably, so I don't want this to sort of read down to the disadvantage of the government, but the pattern of charging is it's only where there was at least something, maybe not enough, defense counsel argue, to link the particular defendant with the particular victim. Right? So it was not sort of a blunderbuss Pinkerton. They're all liable for everything that any of them are guilty of. But anyway, that's why I was a little puzzled, or at least I thought that's what the way the government charged the case in the indictment. It doesn't bind you that you didn't charge people with other crimes, but that's the way it was charged. And then there was no big- What are they talking about? See the Pinkerton charge in the government's brief. Yes, Your Honor. It was an omission from our brief, but I think it's very important to the issue before the court. I should think so. Thank you. So I'll turn now to, I guess, I suppose the abortion issue. The fact that evidence of forced or induced, fraudulently induced abortions were presented in this case. There's no doubt that abortion is a very polarizing issue, that people have strong feelings about it, which is why the court addressed it in voir dire, which is why the testimony on it was extremely limited. It was just very factual recitations of what happened and what happened directly after that. And the court made an appropriate determination that in this case, a case involving the sex trafficking of adults and minors, threats to physical abuse, rape, threats to harm or kill victims' family members, that the fact that women also were tricked into having abortions or otherwise forced to endure abortions or attempted abortions was particularly relevant, relevant enough that it should be admitted. It's also relevant- So just how precisely would you articulate the relevance? First of all, it shows that the women were engaged in romantic relationships with either the traffickers. In other words, they were involved in either the sex trade, which caused them to get pregnant in the first place or were pregnant by the defendants. It shows that they were under, that they endured forced fraud and coercion throughout the scheme. It is not true that they were tricked in the beginning and then forced. Forced fraud and coercion was pervasive throughout. In fact, some of the women were told they had to work in trafficking to repay their traffickers' families for these abortions that they didn't want. And so they directly worked in prostitution to pay off their debts from these abortions. And in the case of trickery, it also shows some of these women might not have worked in prostitution if they had been young mothers and had children. And so by having them go through abortions, they could continue to work in the sex trade and continue to be prostituted by the defendants. So it's directly relevant to every aspect of sex trafficking as charged in this case. I'll turn next to the challenge to the interpretation of the knowledge requirement of 18 U.S.C. 2423a. The defendants invite the court to overturn its precedent in Griffith. There's no basis for that. None of the Supreme Court cases that have come down since the decision in Griffith suggest that an alternative reading of that particular statute is warranted. In fact, in virtually every opinion to address the issue, courts have held that this section is different. It was different at the time because sex offenses of minors are different. It was different in the sense that it doesn't separate innocent from criminal conduct, which was a big consideration in Rehave. And also, the Congress did not include a mistake of law defense as it did for the section coming right after it, 2423b. Certainly, Congress could have if it had wanted to, but there was a determination made that the burden should be on the defendant committing the offense of transporting someone for prostitution to have a possibility that that person might be underage. And finally, I'll deal with the issue of the disclosures with regard to the victim, Diana. The government represented during the trial in this case that all of the 3500 material, every written or recorded statement in its possession had been disclosed to the defense. Is that your representation now? Yes. And where in the record was that representation made? I don't have the precise... I might have the precise location in one moment, but if not, it is in the government's brief. There's a colloquy about this. I can check in a moment, but I just want to note that... You agree that if there were notes of a conversation, a prep session of the witness, where the witness told the government what she later told the jury, and notes were taken that reflected the content of that debriefing, that would be 3500 material that would be required to be disclosed? Absolutely, Your Honor. Okay. And no matter when that happened,  the evening before she testified? Absolutely, Your Honor. And you were trial counsel. Did you handle this witness? I did not handle this witness, Your Honor. And this witness in particular had suffered from, I think, pretty significant trauma and did not want multiple prosecutors in the room when she was preparing. But I have spoken, the whole team has spoken, and we consulted before making the representation to the district court. We did not have any notes reflecting the particular statements that have been identified. We turned over all of the notes that were taken. With that, unless Your Honors have any other questions. Just, there's a sentencing error that the government concedes, correct? Yes, that's correct. And that was over the max with respect to Abel. That's correct, count 18. Right, and so that at least goes back for a limited resentencing on that count. I believe it can go back for correction because there's no, the verdict stands. But yes, it needs to be remanded for correction. When you say correction, it's not like a clerical error in the creation of the judgment document, is it? It was what was said at sentencing? I believe that was what was pronounced at sentencing, yes. So I think it's a resentencing on the count. Is that, are you arguing for something different than that? I believe it might be a resentencing on that count, yes. Well, would it not be within the discretion of the judge to give a global resentencing if the judge so chose? That's, yes, it's within the district court's discretion. If nothing further. So just for the language then, it is in light of a sentencing over the statutory maximum, this defendant is entitled to resent. I believe that's accurate, Your Honor. If nothing further, thank you. I'll refer to my brief. Thank you, Ms. Kastner. Mr. Edelson. Your Honors, if I may, I would actually like to address Judge Lynch's question regarding what happens if there is a reversal of an individual count. My client has also attacked an individual count, the money laundering conspiracy. And we cited the Hertzler and Quinteri cases, among others, in our brief, stating that where one or some counts are reversed, a de novo resentencing results on all counts. A de novo resentencing is ordinarily required on a direct appeal. There's a sort of live issue about whether the same is true with respect to vacating of a count on a 2055 motion because the statute gives certain options about what may happen when a count is vacated on habeas and what exactly that means is the subject of some dispute among the circuits. But I think you're right that on a direct appeal, if one count is overturned, there has to be an entire resentencing. Yes. That's what we have submitted, Your Honor. And I would submit that that's true for all. You cited the relevant case law, and we'll certainly check it out to make sure we're doing the right thing. Yes. And just briefly on the issue of the abortion evidence, the government has alleged three items of relevance. I would submit again that any relevance on any of these three issues was at most marginal. There was ample other evidence to make these points. The abortion added little, and even testimony that's characterized by the government as limited and factual. When you take into account what an explosive and divisive issue abortion is, that I would submit that can't be discounted. It can't be written off. Your Honor, Rule 403 argument, essentially. You're saying that you'd like us to say there's no relevance at all, but that the relevance is outweighed by the prejudicial impact because the relevance has to be discounted by the fact that really they didn't need abortions to prove that the women engaged in sex for money and sex with the defendants. That wasn't really an issue in the trial, et cetera, et cetera. That's the argument. If the judge abused her discretion in not determining that the prejudicial impact of this evidence far outweighed whatever relevance we might find. Correct, Judge. Based on the Rule 403 in the case law cited in the briefs, with the additional argument that the district court's rationale that force and trickery are essentially one and the same was also an error of law. If there are no further questions, I'll rest on the briefs. Thank you, Mr. Edelstein. Ms. Kelman. I'll be very brief. First, I apologize to the court for misstating the status of the Pinkerton charge. It did escape me. I will say that. It escaped me too, so. That puts me in favor. No offense taken. Thank you. But with respect to the counts that I'm arguing, the Rule 29, those are all substantive counts. And I mean, my client is charging count one, two, and three, but I'm not arguing against those counts. But with respect to counts 10, 11, and 12, I think that it's fair to say there's no substantive evidence that my client was involved in this trafficking of this woman. And the government does not make out any aiding and abetting with respect to my client. His mere presence in a taxi cab. We're not talking about a taxi cab that crossed the border. We're talking about a taxi cab that goes from the Bronx to Queens. Exactly. And he plays no part whatsoever in contributing to the success or furthering this crime. And for those reasons, I think that those three counts should be set aside. Thank you, Mr. Gilman. Thank you, Your Honor. Mr. McLaughlin. Thank you, Your Honor. Just briefly, in terms of, because Pinkerton wasn't briefed, sitting here going, oh God, what's Pinkerton? I kind of remember what it is. In terms of how it impacts the resolution of this, we're challenging, not the conspiracy charge, we're challenging the substantive crimes. And my understanding of liability for substantive crimes is either a guy did it, or he aided and abetted it. The fact that it may, under Pinkerton, be reasonably foreseeable goes back to the fact that he's guilty of a conspiracy, and we're not challenging that. So I don't think Pinkerton is a substitute to affirm those two convictions. Thank you. Thank you. And Mr. Houston, you have a minute. Just briefly on the remand for resentencing. It's our position that it just would be focused on count 18. We're not challenging the sentencings on the other four counts. And so that would, the mandate would go back just for resentencing on that specific count. Just briefly also, with respect to... Do you want that? I mean, maybe there are reasons why you don't want a global resentencing. Sometimes you risk a higher sentence. Yeah, sometimes you may risk a higher sentence. On the other hand, one of the reasons that typically there is a global resentencing is because, you know, evidence of... If the person is being resentenced now as opposed to then, there may be evidence of rehabilitation in the period between then and now. There may be, I don't know if there are in this case, but there could be intervening changes in law that might affect the sentencing. And we don't really know to what extent we can make inferences. We don't actually know that the district court wasn't influenced with respect to setting the total sentence by some particular count that might seem particularly severe. So often defense counsel want a global resentencing in these situations, rather than just what would be a fairly ministerial act, I take it, to go back and say he only gets two years, not five, on a count that doesn't actually affect the entire sentence at all. Well, Your Honor, the circumstances here, I think the guideline in this case was close to 40 years. Yeah, right. And the judge sentenced him to 20. And if you take away... The mandatory amendment was 15. And if you take away the acceptance points, we're sort of getting to 20. So I think it's particular to this circumstance, Your Honor. So you're not asking at any rate for a global resentencing with respect to that sentencing point? That's correct, Your Honor, under the circumstances. And also briefly, in terms of the disclosure that was made, it was March 2nd, before Diana testified. And I'll just quote. The judge said they disclosed every bit of 3500 material about those witnesses. But this is before she testified. That's the only thing we had. But till today. Okay, so we've heard from today. And just, again, one thing about... Well, the notes, if there were notes of a conversation that morning, that would still be as of that time, right? Did she testify over the course of more than one day? Or were there breaks, do you recall? I think it was one day. I could be wrong about that, Your Honor. I think it was one day. But suffice to say, when you ask the point of question, the date, it was March 2nd that the judge was talking about. And so I was asking for materials after that date. And I hadn't gotten an answer until today. And also the briefing made suggestions to that effect. So the representation in the record is made on March 2nd, but the testimony happens on March 3rd, 4th, 5th, 7th, or some other date. Is that the point? I believe so. I think it's March 11th. Right, that was not the same day that she testified, is the point? That's correct. Got it. Understood. Thank you. Your Honor, I'm out of time. Thank you for the opportunity to speak on behalf of Mr. Abel Malero, Melendez.